WILLOW HILL GRAIN, INC., Plaintiff-Appellee, v. PROPERTY TAX AP-
PEAL BOARD *et al.*, Defendants-Appellants.

Fifth District   No. 5—88—0275

Opinion filed August 9, 1989.—Supplemental opinion filed on rehearing
January 12, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellate Property Tax Appeal Board.

James Tomaw, State's Attorney, of Newton (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant Board of Review of Jasper County, Illinois.

Frank J. Weber and Thomas R. Wiseman, both of Cox, Phillips, Weber, Tedford & Heap, P.C., of Robinson, for appellee.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

On July 20, 1987, appellee, Willow Hill Grain, Inc., brought an action pursuant to the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3–101 *et seq.*) in the circuit court of Jasper County, asking it to review the decision of the Property Tax Appeal Board of the State of Illinois (hereinafter Appeal Board), which found the fair market value of appellee's grain elevator and fertilizer business to be $1,903,335. By order dated April 21, 1988, the circuit court of Jasper County reversed the decision of the Appeal Board and remanded the cause with directions that the Appeal Board find the fair market value of appellee's property to be $1,320,000. Both the Appeal Board and the Board of Review of Jasper County appeal the judgment of the circuit court.

■ Before proceeding to the merits of this case, we point out that the Appeal Board has no standing to prosecute this appeal.

(*Wallman v. Zoning Board of Appeals* (1989), 181 Ill. App. 3d 680, 681, 537 N.E.2d 422, 423.) We therefore dismiss the Appeal Board as a party to this action. The Board of Review does, however, have standing to prosecute this appeal. (*Will County Board of Review v. Property Tax Appeal Board of Department of Revenue* (1971), 48 Ill. 2d 513, 517, 272 N.E.2d 32, 35.) We will therefore consider the merits of the appeal.

On November 15, 1985, appellee appealed the assessment of its real property by the Board of Review to the Appeal Board, claiming that its property had been overvalued and that it had received unequal treatment in the assessment process. In May 1985, appellee had had its property appraised by Ernest E. Zimmer of Specialty Appraisal Service, Inc. Zimmer appraised appellee's property as of January 1, 1985, at $1,165,010. The Board of Review also commissioned an appraisal of appellee's property by Martin D. Miller, an appraiser and property tax consultant. Miller found the fair market value of appellee's property as of January 1, 1985, to be $1,903,335. This was the value used by the Board of Review in assessing appellee's property for tax purposes.

On March 26, 1987, a hearing *de novo* was held before the Appeal Board. The evidence adduced will be set forth herein only as necessary to decide the issue before us. Ernest E. Zimmer testified on behalf of appellee that he used the replacement cost approach to valuation rather than the market comparison approach in determining the fair market value of appellee's property. He used this approach because grain facilities are not standard and it is difficult to compare the sale price of one to the sale price of another. The Board of Review's appraiser, Martin D. Miller, also used the replacement cost approach in determining the fair market value. The results of the two appraisers differed because Zimmer used the replacement cost value provided by the Department of Revenue in his calculations while Miller used the replacement cost value provided by a private service known as Marshall & Swift. According to Zimmer, the Marshall & Swift values are usually higher than actual cost. The two appraisers also used different methods to calculate depreciation.

Although Zimmer used the replacement cost method to determine fair market value, he also testified to comparable sales within the previous three years in the same area as appellee's grain facility. He testified that the rated capacity of appellee's grain elevator is 2,200,000 bushels. The Gibson County Farm Bureau in Princeton, Indiana, purchased two somewhat smaller facilities for $.65 per bushel capacity, including the land and rolling stock. Although the two facilities were

smaller than appellee's, they were excellent facilities. Zimmer did not know the value of the rolling stock that was included in the sale. He testified that the larger the facility, the lower the price per bushel capacity.

Jerry Kennedy testified that he is the president of Kennedy Grain Elevator, Inc., in Newton, Jasper County. He testified that Ernest Zimmer had provided three separate appraisals for Kennedy Grain Elevator, Inc., over a period of eight years. On January 1, 1985, Kennedy Grain Elevator, Inc., owned three grain elevators in Jasper county and one grain elevator just two miles across the Jasper County line. Zimmer appraised these properties for insurance purposes and to support financial statements provided to banks and lending institutions. Zimmer's appraisals were also used in negotiating the sales of the grain elevators. The elevators were sold February 8, 1985, for less than the value Zimmer had appraised them at. The Kennedy grain elevators were very similar to appellee's grain elevator. Appellee's facility is larger than Kennedy's, which had a capacity of 960,000 bushels.

Paul Johnson testified that he has been the manager of appellee's grain facility since 1961. In 1985, the Mont Eagle Mill at St. Marie, which is only five miles from appellee's facility, was sold for $450,000. Only a portion of the sales price was for the grain elevator facility; rolling stock and rolling fertilizer equipment were also included in the sales price. Johnson calculated that only $200,000 to $215,000 of the selling price was for the grain facility. The St. Marie facility had a capacity of 600,000 bushels. Based upon a selling price of $210,000, the St. Marie facility sold for $.35 per bushel capacity. The sale occurred on April 2, 1986. The St. Marie facility is smaller than appellee's and is not on a railroad.

Appellant's appraiser, Martin D. Miller, testified that, in valuing appellee's property, he used the replacement cost approach and checked it against the market comparison approach. His total valuation of appellee's grain facility, including non-appealed parcels, was $1,919,435. At a rated capacity of 2,200,000, this converts to a price of $.87 per bushel capacity.

To determine a value using the market comparison approach, Miller used six sales of grain facilities. The two facilities closest to appellee's are in Harvard and Paxton, Illinois. These facilities are also the closest in size to appellee's. The Harvard facility sold for $1,200,000, but was mortgaged at $1,390,000. The Paxton facility sold for $2,460,000, but was mortgaged for $8,250,000. The local assessor told Miller that based upon the mortgage value, the Paxton facility

had a fair market value of $.99 per bushel capacity and the Harvard facility had a fair market value of $.93 per bushel capacity. Based upon the "green sheet," which purports to set forth the purchase price of the real estate only, the Paxton facility had a fair market value of $.60 per bushel capacity and the Harvard facility had a fair market value of $.80 per bushel capacity. Miller testified that Harvard is at least 250 miles from Jasper County, while Paxton is approximately 100 miles from Jasper County. Miller did not inspect these facilities to determine if they were comparable to appellee's; he did drive by them. The sales of the Harvard and Paxton facilities occurred in 1984 and 1986. Miller admitted that the actual sale price of the real estate was what was listed on the green sheet, not the amount of the mortgage.

The other facilities used by Miller in the market comparison approach had sales prices ranging from $.53 per bushel capacity to $1.19 per bushel capacity. They are as follows:

| Location | Rated Capacity | Declared Sales Price Total | Per Bushel Capacity |
|---|---|---|---|
| Rollo, IL | 420,000 bu. | $400,000 | $.95 |
| Waterloo, IA | 900,000 bu. | $1,050,000 | $1.17 |
| Waterman, IL | 1,000,000 bu. | $530,000 | $.53 (foreclosure) |
| Florence, IL | 1,327,000 bu. | $1,580,000 | $1.19 |

The Appeal Board issued its decision on June 19, 1987. It found that appellee had failed to demonstrate that the Board of Review's assessment reflects a value in excess of fair market value. After comparing the different manners in which the two appraisers applied the replacement cost method and reported on their calculations, the Appeal Board found appraiser Miller's testimony to be more credible and due more weight. The Appeal Board further stated:

"The board of review's appraiser, in his appraisal report, endeavored to check his cost figures with that of actual sales transacted in the marketplace of properties of like use. The [appellee's] appraiser, on the other hand, commented that he did not attempt to utilize the market data approach in his appraisal report, relying solely on the cost approach to value."

The Appeal Board found Paul Johnson's testimony as to the sale of a local grain elevator to be irrelevant because the value he attributed to the real property was speculative and not documented by a sales agreement. The Appeal Board also found Zimmer's testimony as to the sale of a grain elevator in Indiana to be irrelevant because not documented by a sales agreement. Finally, the Appeal Board stated:

"The Courts of this State discourage reliance on the cost ap-

proach when evidence of market data is submitted in the record. The Courts require significant weight to be given to such market data. In this appeal, the board of review's appraiser checked his cost calculations against the market and found them to be supported."

The Appeal Board found the fair market value of appellee's property as of January 1, 1985, to be $1,903,335.

Upon review, the circuit court reversed the Appeal Board, finding that it had erroneously based its decision as to fair market value on the replacement cost method of valuation as opposed to the market approach. Based upon *Chrysler Corp. v. Illinois Property Tax Appeal Board* (1979), 69 Ill. App. 3d 207, 387 N.E.2d 351, the court found the Appeal Board's valuation to be incorrect as a matter of law and against the manifest weight of the evidence. The court further found that the sales testified to by appraiser Miller were too distant and unsupported to form a basis for a market comparison approach to valuation. However, the court found sufficient other evidence in the record of comparable sales to establish a fair market value of appellee's property at $1,320,000 or $.60 per bushel capacity. The court remanded this cause to the Appeal Board with directions that it find the fair market value of appellee's property to be $1,320,000.

The Board of Review appeals. We affirm.

■ While the Appeal Board should not be reversed where it has simply made an error in judgment in valuing the property, it is properly reversed where it has used an improper method of valuation. (*Chrysler Corp. v. Illinois Property Tax Appeal Board* (1979), 69 Ill. App. 3d 207, 210-11, 387 N.E.2d 351, 354.) The trial court found that the Appeal Board had used an improper method of valuation in accepting its appraiser's value based on the replacement cost approach rather than the market approach to valuation. We agree.

■ ■ There are three methods used to evaluate property: (1) the comparison or market approach, which focuses on sales of comparable property; (2) the income approach, which is used when the property is most valuable as rental property; and (3) the reproduction or replacement cost method, which focuses on what it would cost to recreate real property with the same value. (*Chrysler Corp.*, 69 Ill. App. 3d at 211, 387 N.E.2d at 355.) The market or comparison approach to valuing property is preferred, and heavy reliance upon the replacement cost method of valuation has been frowned upon. (*Chrysler Corp.*, 69 Ill. App. 3d at 211, 387 N.E.2d at 355.) The replacement cost method should be used only when there is no actual or potential market for the property in question, and even then it should be only one factor in

the valuation process and not the sole, conclusive method of valuation. (*Chrysler Corp.*, 69 Ill. App. 3d at 212, 387 N.E.2d at 355.) Where there is evidence of comparable sales, the market approach should be used. *Chrysler Corp.*, 69 Ill. App. 3d at 212, 387 N.E.2d at 355.

In the instant case, the Appeal Board accepted the valuation of appraiser Miller. Miller admitted, as did appraiser Zimmer, that his valuation of the property was based on the replacement cost method of valuation. We agree with the trial court that reliance on the replacement cost method of valuation in the instant case was error where the record is replete with evidence of sales of other facilities similar in various respects to appellee's. The record clearly shows that there was an actual or potential market for facilities such as appellee's. Although both appraisers utilized the replacement cost method of valuing appellee's property, both appraisers also testified to what they considered to be comparable sales. The Appeal Board erred as a matter of law in accepting a value which was based on the replacement cost method of valuation.

Appellant argues, however, that appraiser Miller did not rely exclusively on the replacement cost method of valuation, but verified his result by cross-checking it against the market comparison approach. Miller did testify to sales of other grain facilities. This does not, however, change the fact that his valuation of appellee's property was based on the replacement cost approach. Furthermore, the trial court found that the value placed upon appellee's property by appraiser Miller and the Appeal Board was against the manifest weight of the evidence. Again, we agree.

Both appraisers testified to sales of other grain facilities. Miller presented evidence of sales of six grain facilities which ranged in price form $.53 to $1.19 per bushel capacity. The two facilities most comparable to appellee's sold for $.60 and $.80 per bushel capacity. They were 100 and 250 miles away from appellee's facility, respectively. These values are less than the value of $.87 per bushel capacity placed upon appellee's facility by appraiser Miller. The other grain facilities which were included in Miller's written appraisal were substantial distances from appellee's facility and Miller presented no evidence as to how they compared with appellee's facility, the circumstances surrounding their sales or the economic conditions of the communities in which they were located. Appellant presented no evidence of *comparable* sales at a price near $.87 per bushel capacity to support his valuation of appellee's facility.

On the other hand, appraiser Zimmer testified to sales of other grain facilities in close proximity to appellee's. Two grain facilities in

Princeton, Indiana, approximately 50 miles from appellee's facility, each sold for $.65 per bushel capacity. Jerry Kennedy testified that his grain facility, also located in Jasper County, sold in 1985 for $.47 per bushel capacity. Paul Johnson testified to the sale of a grain facility in Jasper County for between $.35 and $.58 per bushel capacity. The Appeal Board found that the absence of a written sales agreement rendered the testimony of Zimmer and Johnson as to comparable sales irrelevant. We disagree. While this might affect the weight to be given their testimony, it does not render it irrelevant.

We agree with the trial court that a value of $.87 per bushel capacity is against the manifest weight of the evidence. From the evidence before it, the trial court found the fair market value of appellee's property based upon the market comparison approach to be $.60 per bushel capacity, or $1,320,000. We think this valuation is supported by the evidence. We therefore affirm the judgment of the circuit court of Jasper County reversing the decision of the Appeal Board and remanding this cause with directions to find the value of appellee's property to be $1,320,000.

For the foregoing reasons, the judgment of the circuit court of Jasper County is affirmed.

Affirmed.

LEWIS and CHAPMAN, JJ., concur.

SUPPLEMENTAL OPINION ON REHEARING

JUSTICE WELCH delivered the opinion of the court:

This cause comes on for rehearing from our opinion filed in this cause on August 9, 1989, and reported at 187 Ill. App. 3d 9, 542 N.E.2d 1287. In that opinion, we held that the Property Tax Appeal Board of the State of Illinois had no standing to prosecute an appeal from the judgment of the circuit court of Jasper County reversing its decision as to the fair market value of the property of Willow Hill Grain, Inc.

The Property Tax Appeal Board (hereinafter PTAB) filed in the supreme court a motion for supervisory order directing us to grant the PTAB leave to seek rehearing. That motion was granted by the supreme court by order dated November 6, 1989, directing us to recall our mandate in this cause and permit the PTAB to file a petition for rehearing. The PTAB filed its petition for rehearing on November 30, 1989, asking us to reconsider our opinion to the extent that it ad-

dressed the PTAB's standing to appeal from the judgment of the circuit court.

A brief review of the prior proceedings herein is necessary. On May 19, 1988, the State's Attorney of Jasper County filed a notice of appeal from the judgment of the circuit court of Jasper County reversing the PTAB's valuation of property of Willow Hill Grain, Inc. The notice of appeal listed both the Jasper County Board of Review and the PTAB as party appellants. On review, we found that both the Board of Review and the PTAB had appealed from the judgment of the circuit court, but, relying on *Wallman v. Zoning Board of Appeals* (1989), 181 Ill. App. 3d 680, 537 N.E.2d 422, held that the PTAB had no standing to appeal and dismissed it as a party appellant. However, because we found that the Board of Review did have standing to appeal, we proceeded to consider the merits of the appeal, ultimately affirming the judgment of the circuit court of Jasper County.

On rehearing, the PTAB argues that it never intended nor desired to appeal from the judgment of the circuit court of Jasper County, that in fact, the State's Attorney of Jasper County had no authority to file a notice of appeal on its behalf, and that it did not discover that the State's Attorney had done so until our opinion herein was filed and a copy received. The PTAB now argues that our decision that PTAB had no standing to prosecute the appeal was incorrect and unnecessary because the PTAB was not properly a party to the appeal. We agree that the PTAB was not properly a party to the appeal and that our finding that it had no standing to appeal was unnecessary.

■ The PTAB is an agency of the State of Illinois. (Ill. Rev. Stat. 1987, ch. 120, par. 592.1.) As such, its sole legal representative in the courts is the Attorney General of the State of Illinois. (*Environmental Protection Agency v. Pollution Control Board* (1977), 69 Ill. 2d 394, 398, 372 N.E.2d 50, 51.) Furthermore, the PTAB at no time authorized the State's Attorney of Jasper County to file an appeal on its behalf. The PTAB had, in fact, made a decision not to seek appellate review in the instant case. The State's Attorney of Jasper County was, therefore, without authority to file an appeal on behalf of the PTAB, or to represent the PTAB before the appellate court.

■ Because the PTAB had no opportunity to be heard in the instant case on the question of its standing to appeal from a judgment of a circuit court reversing its decision, and because our finding that the PTAB had no standing to so appeal was unnecessary to our holding in this case, we vacate that portion of our opinion holding that the PTAB had no standing to appeal from the judgment of the circuit

court of Jasper County.

For the foregoing reason our opinion filed on August *9, 1989,* in case No. 5—88—0275, is vacated in part.

No. 5—88—0275, Vacated in part.

LEWIS, P.J., and CHAPMAN, J., concur.