No. 2--01--1351

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE KENDALL COUNTY BOARD OF REVIEW,) Petition for Review of Order 

                                   ) of the Illinois Property Tax

     Petitioner,                   ) Appeal Board.

                                   )     

v.                                 ) No. 99--2033--C--3     

                         )

THE PROPERTY TAX APPEAL BOARD,     )

                                   )

     Respondent                    )

                              )

(AT&T, Respondent and              ) 

Cross-Petitioner).                 )                            

_________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Petitioner, the Kendall County Board of Review (BOR), appeals from the decision of the Illinois Property Tax Appeal Board (PTAB).  Respondent and cross-petitioner, AT&T, cross-appeals from the same order.  We affirm.

AT&T operates a telecommunications facility and training center on a 15.48-acre parcel of land in Kendall County.  The parcel is zoned for agricultural use with a permitted special use as a telecommunications facility.  Various buildings erected on the property, including a 62,000-square-foot underground building,  total approximately 97,000 square feet.  The property received a 1999 assessed valuation of $79,690 for the land and $1,765,700 for the improvements, for a total of $1,845,390.  AT&T filed a complaint with the BOR, which denied relief and left the assessed valuation at $1,845,390.  AT&T then appealed to the PTAB.  After an evidentiary hearing, the PTAB determined that the fair market value of the property in 1999 was $2 million, and the assessed valuation was $61,438 for the land and $602,762 for the improvements, for a total of $664,200.  The BOR filed a petition for review with this court, and AT&T filed a cross-petition shortly thereafter.  

The BOR first contends that the PTAB's decision and finding of fair market value were against the manifest weight of the evidence.  The findings and conclusions of an administrative agency on questions of fact are to be held 
prima facie
 true and correct.  
Oregon Community Unit School District No. 220 v. Property Tax Appeal Board
, 285 Ill. App. 3d 170, 174-75 (1996); 735 ILCS 5/3--110 (West 2000).  This court may not reweigh evidence or make an independent determination of the facts, and we will not disturb an agency's findings of fact unless they are against the manifest weight of the evidence.  
Oregon Community Unit School District
, 285 Ill. App. 3d at 175.  A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident, not if an opposite conclusion is reasonable or if this court may have found differently.  
Oregon Community Unit School District
, 285 Ill. App. 3d at 175.  In addition, weighing evidence and determining the credibility of witnesses are jobs of the PTAB and are uniquely in its province.  
Oregon Community Unit School District
, 285 Ill. App. 3d at 175.

AT&T presented J. Edward Salisbury, a real estate appraiser, as its expert valuation witness.  Salisbury testified that he applied both the sales comparison approach and the cost approach to determine the value of the subject property.  Under the sales comparison approach, Salisbury took into account the recent sales of eight AT&T parcels with underground buildings in various parts of the country.  This approach led to a value for the parcel of $800,000.  Under the cost approach, Salisbury estimated the value of the land at $185,000, based on sales of other properties in Kendall County and surrounding counties.  He then determined the value of the buildings by the replacement cost method, which determines the current cost of erecting a building of the same degree of utility as the existing structure.  This method produced a value for the buildings of $10,354,737.  He then calculated depreciation of the buildings.  Using five of the properties from his sales analysis, Salisbury concluded that the subject property was subject to an annual depreciation of 3.5% and a total depreciation of 94.5%.  This produced a depreciation amount of $9,785,226 for the property, leaving a net value of the buildings of $569,511.  When this was added to the value of the land, the total value of the property, under the replacement cost method, was $754,511.  Salisbury gave more weight to the sales comparison approach and stated that he believed that the value of the property was $800,000.  

Salisbury also opined that the highest and best use of the property was commercial use as a warehouse.  This opinion was based on the assumption that the county "would consider" changing the current zoning.  Under the current agricultural zoning, the buildings would have zero or negative value, as they had no agricultural use and would need to be torn down.  In addition, the property would not sell as a telecommunications center.  

AT&T also presented the testimony of its tax director, Denis Duvoisin.  According to Duvoisin, AT&T no longer built underground structures such as the one on the subject property, and such buildings had no functional utility for contemporary telecommunications.  AT&T still used the building as a telecommunications facility, and there were no plans to replace the underground building with an aboveground facility.  

The BOR presented the testimony of Donald B. Johnson, an independent appraiser.  Johnson made his initial appraisal as of January 1, 2000, and then estimated "what was there" on January 1, 1999, because AT&T did not provide him with all of the information that he had requested.  Johnson determined that the highest and best use of the property was as a single-tenant communications center; that use was already legally permitted, the site hosted the confluence of five major fiberoptic cables, and any other use would require demolition of the improvements on the property and approval by the Kendall County Board. 

Johnson opined that the fair market value of the land was $185,000.  In determining the value of the improvements, Johnson used the reproduction cost method for the control building and the replacement cost method for the remaining structures.  This resulted in a total value of all improvements of $6,954,359.  Johnson then determined depreciation for the improvements, using the Marshall Valuation Service and some adjustments for functional obsolescence.  Different depreciation percentages were applied to various portions of the improvements.  This resulted in total depreciation of $2,940,271.  Subtracting the depreciation from the value of the improvements, Johnson determined a net value of improvements of $4,014,089.  Adding the value of the land, the fair market value of the parcel was $4,199,089.

The PTAB found that the main building on the property was unusual and difficult to value, as was demonstrated by the "wildly divergent" values found by the two appraisals submitted by the parties.  The PTAB also found that Salisbury's determination that the highest and best use of the property was as a warehouse was "incorrect," as the property was not zoned for such a use and there was no evidence of a reasonable probability of rezoning in the near future.  Thus, Salisbury's appraisal was to receive reduced weight where it conflicted with actual zoning.  In addition, the PTAB also found Johnson's highest and best use analysis to be flawed.  Johnson had opined that the highest and best use was as a telecommunications center.  However, Duvoisin had testified that the telecommunications center would not be purchased by another company because competing systems would be incompatible.  Furthermore, there was no demand for such a building, as government regulations no longer required such buildings to be underground.  Salisbury's sales statistics for other underground telecommunications centers revealed that all of the centers were sold for uses other than as communications centers.  Thus, the PTAB also accorded reduced weight to Johnson's highest and best use analysis.

The PTAB agreed with both appraisers that the value of the land was $185,000.  As to the improvements, the PTAB found Salisbury's cost approach as to the underground portion of the main building to be best supported by the record and valued that portion at $7,088,983.  As to the aboveground section of the main building and the other buildings, the PTAB found Johnson's costs more detailed and complete and used those figures, resulting in a value of $193,675 for the aboveground portion of the main building.  

The PTAB also noted that the appraisers' "vastly different depreciation analyses" resulted in values that were $4 million apart.  The PTAB again found that Salisbury's analysis regarding the underground portion was better supported, and it applied a depreciation rate of 92.7%, the highest such rate Salisbury found for a comparable property, but less than Salisbury's estimate of 94.5%, and determined that the net value of the underground portion was $517,496.  The PTAB concluded that, because the aboveground portion of the building was new, no depreciation should be taken.  Adding the previously determined value of $193,675 for the aboveground portion to the depreciated value of the underground portion resulted in a value of $711,171 for the main building.  As to the other buildings, the PTAB agreed with the depreciated values provided by Johnson, with the exception of a training center that the PTAB concluded should have been functionally depreciated by an additional 15%.  Therefore, adding together all the depreciated values, the PTAB found the value of the property to be $2,149,476.

The PTAB noted that neither appraiser had valued the property under an income approach, and it accorded little weight to Salisbury's sales comparison approach, as the sales that were provided were not comparable in size or zoning.  Salisbury's sales analysis resulted in a value of $1,460,750.  The PTAB found that the subject property had more features and new construction that were not accounted for in the sales analysis.  However, the PTAB then found that the subject property had a value of $2 million as of January 1, 1999, and applied the three-year weighted average median level of assessments for Kendall County of 33.21%.  The correct assessed valuation of the property was found to be $664,200, which was comprised of $61,438 for the land and $602,762 for the improvements.

The BOR argues that the PTAB's decision is against the manifest weight of the evidence because the PTAB used an improper method of evaluation.  According to the BOR, the PTAB improperly relied on the sales comparison analysis contained in Salisbury's appraisal for use in determining the value of the property and the depreciation of the underground portion of the facility.  The PTAB found that Salisbury's determination that the highest and best use of the property was as a warehouse was "incorrect."  However, the PTAB then used one of the sale properties from Salisbury's analysis in its own analysis, even though that property had a highest and best use different from that of the subject property, was sold for a purpose incompatible with the subject property's current zoning, and its current zoning was not known.  

There are three basic methods of property valuation: (1) the sales comparison approach; (2) the income approach; and (3) the cost approach.  
Residential Real Estate Co. v. Illinois Property Tax Appeal Board
, 188 Ill. App. 3d 232, 242-43 (1989).  None of the approaches is conclusive evidence of value, but each is a factor to be considered.  
Residential Real Estate Co.
, 188 Ill. App. 3d at 243.  The PTAB explicitly stated that it accorded "reduced weight" to Salisbury's appraisal "where it conflicts with the subject's actual zoning," "little weight to the conclusions in Mr. Salisbury's sales comparison approach," and only "some weight" to the property in the sales analysis, "as there is little in the record that can be relied on without any rezoning research developed by the parties in this record."  It is obvious that the BOR's characterization of the PTAB's consideration of this property as "reliance" is not accurate.  The PTAB was not prohibited from considering the sales analysis property, and it exercised its discretion by granting the property limited weight.  The BOR cites no case that prohibits the PTAB from giving such a comparison property any weight at all.  We find no error here. 

The BOR next argues that AT&T failed to meet its burden of going forward under the PTAB's rules; therefore, the PTAB should have confirmed the BOR's original assessment.  We disagree.

Section 1910.63(b) of the PTAB's regulations provides that the contesting party must "provide substantive, documentary evidence or legal argument sufficient to challenge the correctness of the assessment of the subject property.  Failure to do so will result in the dismissal of the appeal."  86 Ill. Adm. Code §1910.63(b) (2001).  Such documentary evidence may consist of an appraisal of the subject property.  86 Ill. Adm. Code §1910.65(c)(2) (2001).  The BOR argues that the PTAB should have rejected Salisbury's appraisal because the basis of the appraisal was Salisbury's "erroneous" determination of highest and best use.  However, we have already concluded that the PTAB could properly consider Salisbury's appraisal even if it gave little or no weight to Salisbury's conclusions.  AT&T provided sufficient documentary evidence to challenge the correctness of the assessment of its property and met its burden of going forward.

The BOR finally contends that the PTAB failed to include the value of the land in its final calculation of the value of the property.  This argument has no merit.  The PTAB found that "the subject property" had a value of $2 million and that the value of the land alone was $185,000, as was determined in both of the appraisals.  In stating the "correct assessed valuation of the property," the PTAB clearly delineated the assessed valuation of the land ($61,438) and the valuation of the improvements ($602,762), which resulted in a total assessed valuation of $664,200, which was 33.21% of the value of the property.  There is no evidence that the PTAB "forgot" to include the value of the land; to the contrary, it specifically accounted for that value. 

In its cross-appeal, AT&T contends that the PTAB should have used the sales comparison approach to value the property instead of the cost approach.  AT&T cites 
Willow Hill Grain, Inc. v. Property
 
Tax Appeal Board
, 187 Ill. App. 3d 9 (1989), for the proposition that the sales comparison or "market" approach is the preferred method of property valuation and that the replacement cost method should be used only when there is no actual or potential market for the property.  However, in the case before us, there was no evidence of an actual or a potential market for the subject property.  The land was zoned for agricultural use, and a special use for telecommunications was allowed.  Salisbury, who appraised the property for AT&T, testified that the property could not be marketed as a communications center.  None of the underground telecommunications centers contained in Salisbury's analysis were used for that purpose after they were sold.  Furthermore, Salisbury testified that the buildings on the property would need to be torn down if the land were to be used for agricultural purposes and that the parcel could then have a negative value.  Thus, under the current zoning restrictions, there was no market for the property.  In addition, the record contained no evidence of a reasonable probability that the zoning would be changed to accommodate any other use.  Salisbury could only state, hypothetically, that the county "would consider" altering or changing zoning on the property to facilitate another use in the event of a sale.  The record was devoid of any current or reasonably probable market for this property.  Thus, the PTAB did not err in placing substantial reliance on the cost approach of valuation.

    Considering the totality of the evidence, a conclusion other than the PTAB's conclusion is not clearly evident, and we must therefore affirm the judgment of the PTAB as not against the manifest weight of the evidence.  
Oregon Community Unit School District
, 285 Ill. App. 3d at 175.

For these reasons, the decision of the PTAB is affirmed.      Affirmed.

GROMETER and CALLUM, JJ., concur.