SIXTH DIVISION

April 16, 2004

Nos. 1-02-0687 / 1-02-0771 (Consolidated)

UNITED AIRLINES, INC.,

Plaintiff-Appellant,

v.

MARIA PAPPAS, Cook County Treasurer and 
ex officio
  County Collector, 

Defendant-Appellee. 

UNITED AIRLINES, INC.,

                       Plaintiff-Appellee,

v.

MARIA PAPPAS, Cook County Treasurer and 
ex officio
  County Collector,

Defendant-Appellant. 

))))))))))

 

))))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Marsha D. Hayes,

Judge Presiding.

Appeal from the

Circuit Court of

Cook County

Honorable

Marsha D. Hayes,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

This is a consolidated appeal relating to taxpayer United Airlines, Inc.'s, objection to the real estate tax assessment (assessment) pertaining to its leasehold interest in terminal space (leasehold interest) at O'Hare Airport, Chicago, Illinois, for the tax years 1994, 1995 and 1996.
(footnote: 1)  The trial court granted taxpayer relief for the 1994 tax year and ordered a reduction in the 1994 assessment.  The trial court denied relief for the 1995 and 1996 tax years.  

Defendant Cook County treasurer and 
ex officio
 county collector (collector) appeals the trial court's judgment granting taxpayer relief from the real estate taxes levied against taxpayer's leasehold interest for the 1994 tax year.  Collector first argues on appeal that the method used by taxpayer's appraiser failed to consider actual market rental transactions.  Collector next argues on appeal that the appraiser's conclusion regarding market rent was impeached by objective market value evidence.  Collector also argues that the appraiser's methodology used to calculate a depreciated value of the leasehold interest's exclusive-use space was legally incorrect.  Collector's last argument is that the cost approach used by the appraiser failed to include the value of the land underlying the leasehold.  For the reasons stated below, we reverse the trial court's judgment.

Plaintiff-taxpayer United Airlines, Inc., appeals the trial court's judgment denying relief from the real estate taxes levied against taxpayer's leasehold interest at O'Hare Airport for the tax years 1995 and 1996.  In this appeal, taxpayer contends that the evidence presented at trial was legally sufficient to support its contention that the 1995 and 1996 assessments, not just the 1994 assessment, were incorrect or illegal.  Taxpayer also contends that the limit on the assessing official's powers and the custom and practice of assessing officials further support the conclusion that the entire triennial assessment was incorrect.  For the reasons stated below, we affirm the trial court's judgment.

I.  BACKGROUND

The following facts are pertinent to this appeal.  Taxpayer has a leasehold interest in terminal space located at O'Hare Airport.  The leasehold interest relates to property consisting of approximately 891,666 square feet of exclusive-use space occupied by taxpayer in Terminal 1, Concourses B and C; Terminal 2, Concourses E and F; and the underground baggage facility.  The City of Chicago owns the property, which is tax exempt.  Taxpayer is responsible for paying the real estate taxes pursuant to section 9-195 of the Property Tax Code, which provides that a lessee of tax exempt property for purposes which are not tax exempt subjects the lessee to pay taxes on the property in the same manner as on property that is not tax exempt.  35 ILCS 200/9-195 (West 1996). 

The property was subject to a general assessment by the Cook County assessor in 1994 and was scheduled for reassessment in three years.  35 ILCS 200/9-220 (West 1996).  The property's assessed value was $29,965,249 in 1994 with an imputed fair market value of $78,855,918.  The assessed value in 1995 rose slightly to $29,969,818 with an imputed fair market value of $78,867,942.  In 1996, the assessed value rose by $1 to $29,969,819 with a $3 increase in the imputed fair market value to $78,867,945.

Taxpayer filed a request for a reduction of real estate taxes for each year of the 1994 triennial assessment with the Cook County Board of Review, which was denied.  After exhausting available administrative remedies and paying the outstanding real estate taxes, taxpayer filed valuation objection complaints in the circuit court of Cook County, county division.  35 ILCS 200/23-15 (West 1996).  On December 8, 1999, each valuation objection complaint for the 1994 triennial assessment was merged and proceeded as one case.  This merged case was tried in a bench trial on October 15, 2001.  

The parties stipulated to all matters relating to the statutory requirement of full payment of real estate taxes and exhaustion of administrative remedies.  Robert Herman was the only witness to testify at trial.

Taxpayer called Robert Herman to testify at trial as an expert witness.  Herman is employed as a tax consultant at Deloitte & Touche in Chicago, Illinois, and has over 16 years experience in the real estate appraisal profession.  Herman was previously employed as a real estate appraiser for Real Estate Analysis Corporation.  Herman obtained the designation of MAI, Member of the Appraisal Institute, in 1990, which is the highest designation in the appraisal profession and requires approximately five years of work and study.  Herman is certified in Illinois and various other states as a real estate appraiser.  Apart from his work on behalf of taxpayer, Herman has appraised approximately 12 airport properties.  The trial court found Herman qualified as an expert in the field of real estate valuation.

At trial, Herman described the methodology he used to appraise the property.  Herman indicated that he relies on the methodology set forth in 
People ex rel. Korzen v. American Airlines, Inc.
, 39 Ill. 2d 11, 233 N.E.2d 568 (1967), in appraising properties.  According to 
American Airlines, 
an appraiser is to estimate the property's market rent and then apply a present value factor to calculate the current value of the future rents to be received by the lessor.  In assessing the property, Herman examined appraisals previously prepared by Real Estate Analysis Corporation, the amended and restated airport use agreement and terminal facilities lease between the City of Chicago and United Airlines, and the assessor's record cards.  Herman testified that taxpayer did not rent the entire terminal space.  Based on the agreement with the City of Chicago, taxpayer only was responsible for the square footage that taxpayer used to conduct business.  According to the agreement, taxpayer's space was exclusive-use premises and the remaining terminal space was public use premises. 

Herman also stated that there are three established approaches to value property within the appraisal profession, which are the sales comparison approach, the income capitalization  approach and the cost approach.  The sales comparison or market approach focuses on sales of comparable property.  
Willow Hill Grain, Inc. v. Property Tax Appeal Board
, 187 Ill. App. 3d 9, 14, 549 N.E.2d 591, 596 (1989).  The income capitalization approach is used when the property is most valuable as rental property.  
Willow Hill Grain, Inc.
, 187 Ill. App. 3d at 14, 549 N.E.2d at 596.  The cost or replacement cost method focuses on what it would cost to recreate the property with the same value.  
Willow Hill Grain, Inc.
, 187 Ill. App. 3d at 14, 549 N.E.2d at 596. 

Herman indicated that he used the income capitalization approach to determine the leasehold's value.  An element of the cost approach was used to estimate market rent.  Herman stated that using the cost approach to value the leasehold was consistent with the principles set forth in 
American Airlines
. 

Herman concluded that the terminal space is special purpose property.  Herman defined special purpose property as property that due to its design and use is so limited that the property could not be converted to an alternate use. 

Herman indicated that an appraiser usually is able to locate substitute real estate property for purposes of the sales comparison approach.  However, the property here is an airport terminal facility that economically cannot be converted to an alternate use.  Herman further stated that based on an analysis he performed, other terminal space at O'Hare Airport and other airports across the country could not be used as comparable property sufficient to develop a sales and income approach.  Herman explained that comparable property could not be located because the actual rent paid to the City of Chicago included business arrangements that did not contribute to the property's value.  Herman further explained that since he considers the property to be classified as special purpose property, the best way to determine market rent was through a cost approach. 

Herman proceeded to described the approach used to appraise property.  The cost approach is premised on the theory that cost is a function of rent.  Herman explained that if the cost per square foot to reproduce the property is determined, a market rental rate could be calculated.  In using the cost approach, Herman used the Means Cost Manual, a nationally recognized construction cost manual, to determine the various costs to reproduce the terminal.  The Means Cost Manual is a historical database that compares actual construction costs of different projects across the country. 

To appraise the property, Herman took the respective cost figures from the Means Cost Manual and then made adjustments based upon age, time and gross overruns that did not contribute to value.  The cost of the entire square footage for Terminal 1 and Terminal 2 was determined and was then divided by the total building area to compute a reproduction cost per square foot.  Herman next determined the property's depreciation and its effect on the property's overall reproduction cost.  The resulting figure represented the property's  total reproduction cost.  Using the property's reproduction cost figure, Herman calculated a market rent figure.  After an appropriate market rent was calculated, the next step was to calculate the property's value using the methodology set forth in 
American Airlines.  
Using the 
American Airlines
 methodology, Herman determined a discount rate and multiplied the discount rate by the present worth factor over the remaining lease term.  Herman's opinion, within a reasonable degree of certainty, was that the property's value was approximately $59,760,000 as of January 1, 1994.  Herman testified that his opinion regarding the property's value would not be materially different in 1995 and 1996.  Herman explained that the 
American Airlines 
formula had three variables, consisting of market rent, the discount factor and the lease term.  In each subsequent year, the lease term is shortened.  The market rent in 1995 and 1996 would be slightly higher, but the increase would be offset by the lower present value factor.  Therefore, Herman concluded that the value for 1994 would not be materially different in 1995 and 1996.  

Collector did not present witnesses to testify at trial.  Collector admitted two exhibits, consisting of an invoice from the City of Chicago and a copy of the lease agreement between  taxpayer and the City of Chicago. 

The trial court held that 
American Airlines
 provided the relevant law to calculate the property's market value.  The trial court ruled in the taxpayer's favor for 1994.  Accordingly, an order was entered correcting the assessed value for 1994 from $29,965,249 to $22,708,800.  The Cook County treasurer was ordered to refund $1,420,773.82 with 5% 
per annum 
statutory interest to taxpayer.  The trial court also ruled that the expert witness's testimony that the property's value would not be materially different in 1995 and 1996 was "not enough" to change the property's assessed value for those years.  Therefore, an order was entered denying the valuation objections for 1995 and 1996.  Taxpayer filed a timely notice of appeal after the disposition of a posttrial motion.

II.  STANDARD OF REVIEW

As a preliminary matter, we must determine the appropriate standard of review.  The parties each contend that a different standard of review is applicable to this appeal.  Collector contends that because the appraiser used improper valuation methods in computing the leasehold interest's value, a question of law is presented in this appeal which requires a 
de novo 
standard of review.  See 
Kankakee County Board of Review v. Property Tax Appeal Board
, 131 Ill. 2d 1, 14, 17, 544 N.E.2d 762, 768, 769 (1989).

Taxpayer contends that this appeal presents a mixed question of law and fact, which requires application of the "clearly erroneous" standard of review.  A mixed question of fact and law is defined as "one 'in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard.' "  
AFM Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d 380, 391, 763 N.E.2d 272, 279 (2001) quoting 
Pullman-Standard v. Swint
, 456 U.S. 273, 289 n.19, 72 L. Ed. 2d 66, 80 n.19, 102 S. Ct. 1781, 1790 n.19 (1982).  Taxpayer argues that determination of the proper valuation method is a question of law, but any question regarding how market rent was obtained is a question of fact.  Therefore, taxpayer contends, the appropriate standard of review is "clearly erroneous."

Findings of administrative agencies, such as the Property Tax Appeal Board, are 
prima facie 
correct.  See 
Chrysler Corp. v. Illinois Property Tax Appeal Board
, 69 Ill. App. 3d 207, 210, 387 N.E.2d 695, 698 (1979).  However, courts have intervened in real estate objection valuation cases when the issue relates to the use of an improper valuation method.  
Chrysler Corp.
, 69 Ill. App. 3d at 210-11, 387 N.E.2d at 698.  This appeal requires us to examine the appropriateness of the valuation methodology used by taxpayer's expert in valuing the leasehold interest to support its objection to the leasehold's assessed value.  We are not charged with the responsibility of determining the leasehold interest's correct value or market rent in this appeal.  Therefore, our standard of review relating to the question of law at issue in this appeal is 
de novo
.  
Town of Cunningham v. Property Tax Appeal Board
, 225 Ill. App. 3d 760, 763, 587 N.E.2d 573, 575 (1992); 
Chrysler Corp.
, 69 Ill. App. 3d at 210-11, 387 N.E.2d at 698.  We also note that the assessor's property assessment is presumed correct.  
People ex rel. Devine v. Murphy
, 181 Ill. 2d 522, 524, 693 N.E.2d 349, 352 (1998).  A taxpayer contesting an assessment bears the "burden of proving any contested matter of fact by clear and convincing evidence" and showing an assessment to be incorrect or illegal.  See 35 ILCS 200/23-15 (West 1996);
 American Airlines
, 39 Ill. 2d at 20, 233 N.E.2d at 573.

III.  ANALYSIS

A.  1994 Assessment Objection Analysis

Collector raises four issues for review in this appeal relating to the 1994 assessment.  First, collector argues that the appraisal method used by Herman is fatally flawed because it fails to refer to actual market rental transactions.  Second, Herman's conclusion regarding the market rental was impeached by objective market value evidence.  Third, the methodology used by Herman to determine a depreciated value for the exclusive-use space is legally incorrect.  Finally, Herman's use of the cost approach was flawed because it failed to consider the rental value of the land.  

Collector first argues that Herman used an unauthorized appraisal method that failed to support an assessment reduction.  Collector contends that a leasehold interest is valued by the present value of all the future payments the lessee is to pay the lessor, or the present value of an annual payment of one dollar for the unexpired term of the lease.  The monthly present worth factor of 98.59 is uncontested in this case.  The parties agree that 98.59 represents the present value of an annual payment of one dollar for the unexpired term of the lease.  The parties, however, disagree on the current market rental figure to be multiplied by 98.59.  Collector points to Herman's testimony in which he indicated that based on his analysis, the monthly market rental should be approximately $606,000.  Collector, however, presented an invoice dated January 1994, which indicated that taxpayer paid the City of Chicago $4,300,000 as rent for the month. 

Collector claims that Herman attempted to calculate a current monthly rental figure without reference to the market, which is contrary to the requirements set forth in 
American Airlines
.
 
 Collector refers to Herman's testimony in which he stated that he could not find comparable market data and that there was a lack of comparable arm's length lease transactions. Collector also refers to Herman's testimony in which he indicated that he had knowledge of the following: existence of numerous leases at O'Hare Airport; existence of leases at other major airports; the rent taxpayer paid at O'Hare Airport and at other airports could be determined; and the rent paid by other airlines at other airports also could be determined.  Collector contends that since Herman's approach to determine the "market value" failed to consider available market data, the appraisal should be insufficient to overcome the presumption that the assessment is correct as a matter of law.  Collector argues that Herman erroneously and inexplicably chose not to find the market rent.

Taxpayer responds that Herman examined numerous airport leases with airlines across the country, which included Northwest Airlines, Delta and Air Wisconsin, in preparing the appraisal report.  Herman explained that in analyzing the other leases he did not find comparable leases containing an arm's length transaction from which a net rental rate could be extracted.  Herman reasoned that the leases were not arm's length because it is difficult to ascertain the amount of net income derived from rentals of comparable terminal facilities in other cities.  Herman explained that the rental rates varied depending on the method the airlines used to absorb the operating expenses incurred for operating the terminals.  Concluding that comparable leases sufficient to derive a market rent figure did not exist, Herman used the cost approach to estimate market rent.  

Herman turned to the cost approach to estimate market value because established appraisal theory provides that cost is a function of rent.
  Herman used replacement cost to calculate market rent, which considers the cost to rebuild or reproduce the structure, less depreciation costs like normal wear and tear of the structure over time.  Herman then took the calculated replacement cost and prorated or applied it to a periodic monthly cost.  Herman then added the amount of return that an investor would likely expect to receive per month.  Taxpayer argues that the methodology used by Herman to calculate an estimated market rent has been accepted by Illinois courts, which have acknowledged that a valuation method based on reproduction costs is helpful where no market value can be determined. 

Taxpayer relies on 
Kendall County Board of Review v. Property Tax Appeal Board
, 337 Ill. App. 3d 735, 787 N.E.2d 363 (2003), to support its position that the cost approach to valuation is an accepted method to value property.  In 
Kendall County Board of Review
, this court held that use of the cost approach was valid because no evidence existed in the record indicating a reasonable actual or potential market for the property.  
Kendall County Board of Review
, 337 Ill. App. 3d at 741-42, 787 N.E.2d at 369.  This court reached its holding that a lack of an actual or potential market exists because the subject property was zoned for agricultural use but a special use for telecommunications was allowed.  
Kendall County Board of Review
, 337 Ill. App. 3d at 741, 787 N.E.2d at 369.  Evidence was presented in 
Kendall County Board of Review
 that the property could not be marketed as a communications center and the structures currently on the land would need to be demolished in order for the land to be used for agricultural purposes.  
Kendall County Board of Review
, 337 Ill. App. 3d at 741, 787 N.E.2d at 369.  Taxpayer contends that 
Kendall County Board of Review 
supports its position because in the instant case, the trial court accepted Herman's conclusion that the leasehold interest was a special purpose property which lacked market transactions.  Taxpayer, therefore, argues that due to the lack of a market, using the cost approach was proper.

Taxpayer also contends that 
De Luz Homes, Inc. v. County of San Diego
, 45 Cal. 2d 546, 290 P.2d 544 (1955), supports use of the cost approach.  The issue in 
De Luz Homes, Inc.
 involved the proper valuation of a leasehold interest of a military 562-unit housing project on tax exempt land owned by the United States government.  
De Luz Homes, Inc.
, 45 Cal. 2d at 553, 290 P.2d at 549.  The California Supreme Court in 
De Luz Homes 
recognized the existence of different valuation methodologies and held that factors including replacement costs and income analysis may be used to determine value when there is an absence of an actual market for a property.  
De Luz Homes
, 45 Cal. 2d at 563, 290 P.2d at 555, citing 
Kaiser Co. v. Reid
, 30 Cal. 2d 610, 623, 184 P.2d 879, 887 (1947).  Taxpayer argues that similar to the property in 
De Luz Homes
, Herman was required to use replacement cost and income analysis to value the leasehold since an actual market for the property did not exist because the property was special purpose property.  Taxpayer also argues that the lease at issue in the instant case involved numerous costs and agreements making it difficult to determine a net rent figure and the property underlying the leasehold interest could not be economically converted into an alternative use.  

We agree with Collector that Herman erred in failing to consider market data in calculating the appraised value of the leasehold interest.  We are unpersuaded by taxpayer’s contention that the leasehold interest related to special purpose property for which no market exists.  Special purpose property is property " 'of such nature and applied to such special use that it cannot have a market value.' "  
Chrysler Corp.
, 69 Ill. App. 3d at 212, 387 N.E.2d at 355, quoting 
City of Chicago v. Farwell
, 286 Ill. 415, 420, 121 N.E.2d 795, 797 (1918).  The key criterion in determining whether property is special purpose property is "whether the property is in fact so unique as to not be salable, not what factors might or might not make it so unique."  
Chrysler Corp.
, 69 Ill. App. 3d at 213, 387 N.E.2d at 356.  

While we acknowledge that the rental of an airport terminal may be considered property of special use, we are not persuaded that the lease of such property is “so unique as to not be salable.”  We are mindful that the practical use for such a leasehold interest would be use as a terminal and baggage check-in; we, however, do not consider the nature of the leasehold interest in this appeal to be “one of a kind.”  The airline industry consists of a multitude of airlines, many of which would likely eagerly pursue available terminal space at what has been known as the world's busiest airport.  We are cognizant of Herman's testimony in which he acknowledged that leases with other airlines existed at O'Hare Airport.  Therefore, we disagree with taxpayer's contention that the leasehold interest is so unique as to not be salable and for which no market exists.  

Concluding that the leasehold interest is not so unique that a market for it does not exist, we now address the appropriateness of the valuation method adopted by Herman in appraising the property.  Herman adopted the income capitalization method to appraise the leasehold interest and used the replacement cost method to determine market rate.  We, like the courts in 
Kendall County Board of Review 
and 
De Luz Homes
, acknowledge that the income capitalization and replacement cost methodologies are acceptable appraisal methodologies to value property.  The sales comparison approach, however, is the preferred method and should be used when market data is available.  See 
Willow Hill Grain, Inc.
, 187 Ill. App. 3d at 14, 549 N.E.2d at 596.

The relevant market data for purposes of this appeal is the fair cash value of the leasehold interest.  The fair cash value of a leasehold means the “rental value in the market – the amount a willing lessee will pay a willing lessor, in a voluntary transaction, for the right to use and occupy the premises.”  
American Airlines, 
39 Ill. 2d at 18, 233 N.E.2d at 572.  In reviewing Herman’s trial testimony, we note that Herman was aware that Northwest Airlines and possibly Delta Airlines paid $5 per square foot on a net basis for exclusive-use space at O’Hare Airport.  We also note that Herman stated that he could have determined the gross rent for taxpayer at O’Hare Airport, the gross rent for any other of the major airlines and would have been able to determine the gross rent for taxpayer at other airports around the country.  We are mindful that no two pieces of real estate are identical and that the leases at O’Hare Airport for terminal space may not be boilerplate.  However, we are not persuaded that the variance of lease terms supports the conclusion that there are a lack of arm’s length lease transactions, which prohibits compilation of market rental data for valuation purposes.  Rather, we conclude that the existence of other leases at O’Hare Airport for the lease of terminal space demonstrates the existence of a market for such property.  The record in this case amply supports the conclusion that a potential market for the property exists.  Therefore, we believe that the appraisal of the leasehold interest should have been based in whole or in part on the sales comparison approach, especially in light of the disparity between the monthly rental of $606,000 computed by Herman and the actual monthly rent paid by taxpayer of $4,300,000.  By failing to consider the sales comparison approach in determining market value of the leasehold interest, we conclude that taxpayer has not met its burden of demonstrating that the assessment was incorrect by clear and convincing evidence.

We note that both parties have thoroughly argued and responded to each other's claims regarding the remaining contentions with respect to the 1994 valuation objection.  We also note that this court in 
American Airlines 
rejected the taxpayer's argument that the tax on a leasehold is assessed on "the potential profit available upon assignment of that interest, rather than the fair cash value of the interest."  
American Airlines
, 39 Ill. 2d at 17-18, 233 N.E.2d at 572.  Since we conclude that the appraised value of the leasehold interest should have included an analysis of existing market data, we need not separately address: Collector's contentions that the appraised value was impeached by objective market value evidence, that the appraiser's methodology to compute depreciation on the leasehold's exclusive-use area was legally incorrect, and that the value of the land should have been included in the cost approach used by the appraiser. 

B.  1995 and 1996 Assessment Objection

Taxpayer raises two arguments on appeal regarding the rejection of relief for tax years 1995 and 1996.  The first argument is that the 1994 reassessment applied to 1995 and 1996 since the property was reassessed for the general assessment year in 1994, the property was not reassessed during the triennial and no physical changes to the property occurred.  The taxpayer's second argument is that the statutory limitations on the powers of assessing officials and the custom and practice of the assessing officials support the finding that the assessment was incorrect for the entire triennial period.  Taxpayer contends that clear and convincing evidence was presented that the 1994 triennial assessment was incorrect.

We note that one appraisal report was prepared to support the assessment objection for the 1994, 1995 and 1996 tax years and Herman testified that the 1994 appraised value would not materially differ for 1995 and 1996.  However, our conclusion that clear and convincing evidence was not presented that the 1994 assessment was incorrect disposes of taxpayer's contentions that the assessment was incorrect for the entire triennial period.  In light of our conclusion regarding the 1994 assessment, an analysis of this issue on appeal is not warranted.

For all of the foregoing reasons, the judgment of the trial court is reversed regarding the 1994 valuation objection (No. 1-02-0771) and affirmed regarding the 1995 and 1996 valuation objection (No. 1-02-0687).

No. 1-02-0771, Reversed.

No. 1-02-0687, Affirmed.

O'MARA FROSSARD, P.J., and FITZGERALD SMITH, J., concur.

FOOTNOTES
1: The 1994, 1995 and 1996 tax objection cases were consolidated for pretrial purposes by an order of the circuit court.  The cases were "merged" for all further proceedings by court order and the cases proceeded to trial together.