July 28, 2008

No. 1-04-2402

THE COOK COUNTY BOARD OF REVIEW,   )   Petition for
                                   )   Review of Decision
        Petitioner-Appellant,      )   of the Property Tax
                                   )   Board and Docket
    v.                             )   Numbers.
                                   )
ILLINOIS PROPERTY TAX APPEAL BOARD )
and OMNI CHICAGO,                  )   No.  98 29670-C-3
                                   )
        Respondents-Appellees.     )

JUSTICE GARCIA delivered the opinion of the court.

This appeal arises from an administrative proceeding involving a property tax assessment before the Cook County Board of Review (BOR). The respondent-taxpayer, Omni Chicago, filed a complaint with the petitioner, the BOR, alleging that its property had been overassessed in 1998. After reviewing Omni's complaint, the BOR refused to reduce the assessment. Omni appealed to the Illinois Property Tax Appeal Board (PTAB). The PTAB conducted a hearing and reduced the valuation of property from $48,296,794 to $43,250,000. The PTAB relied on Omni's appraisal of the property, which focused on the income approach to property valuation, to establish market value. The BOR appeals that decision, arguing the method of valuation adopted by the PTAB was improper as a matter of law because (1) it excluded the sales comparison approach, and (2) it utilized a vague and expanded definition of market value based on a hypothetical model with no basis in fact or law. Because we

agree with the BOR's first argument, which we find dispositive, we reverse and remand.

BACKGROUND

Omni Chicago is the owner of real property located at 676 North Michigan Avenue in Chicago. The subject property consists of a 17,550-square-foot land parcel improved with an 8-year-old, 40-story, mixed-use commercial building, containing approximately 485,000 square feet of building area. The building is composed of three distinct areas: (1) 139,193 square feet of office space; (2) 276,408 square feet of hotel space; and (3) 24,680 square feet of retail space. The subject property had a zoning classification unique in the City of Chicago; it was zoned "planned development 428."

For taxyear 1998, the Cook County assessor issued an assessment for the subject property of $18,352,782. This tax liability, which was leveled at 38% for commercial property, reflected a market value of $48,296,794. Omni appealed both the market value determination and the assessment level to the PTAB. Omni alleged that the market value was overstated and that the correct market value was $43,250,000.

At a hearing before the PTAB, Omni introduced a written appraisal by Arthur J. Murphy, Sr., of Urban Real Estate Research, Inc., which valued the subject property at $43,250,000 as of January 1, 1998. Murphy testified that the subject property was appraised as a fee simple estate, and he opined that it was being

used for its highest and best use. Murphy testified that although he considered all three of the classic approaches to value the subject property, he found neither the cost nor the sales comparison approach was appropriate. Concerning the cost approach, Murphy testified that due to the unique character of the building, adjustments in that approach would be too subjective. He did not employ the sales comparison approach because there had been no sales of properties similar to the subject property within the Chicago area with which to make a meaningful comparison. Murphy, therefore, relied on the income approach to value the subject property.

Under the income approach, Murphy identified three profit centers within the subject property: (1) the office space; (2) the hotel; and (3) the retail space. To estimate the value of the office space, Murphy used historic office space rentals of four buildings located in close proximity to the subject property. The four buildings contained between 250,000 and 500,000 square feet of office space and ranged in age from 33 to 78 years old. Using rental information from the four previous years, Murphy established a range of $19 to $37 per square foot effective gross rent. Due to the quality of the subject property, Murphy stabilized the base rent at $25.50 per square foot. Other income was stabilized at $0.20 per square foot for a total of $27,839. After analyzing the competing market, Murphy estimated a vacancy and credit loss of 10.1%, which was stabilized at 10%. These calculations resulted in

an effective gross income (EGI) for the subject property's office space of $3,222,318, or $23.15 per square foot.

Murphy then ascertained allowable expenses at $1,501,197, or $10.79 per square foot, by utilizing a 1997 report from the Building Owners and Managers Association International (BOMA) and other market data. Murphy testified that the actual expenses incurred by the subject property's office space were higher than his estimate. Murphy deducted the total expenses from the EGI for a net operating income (NOI) of $1,721,121, or $12.37 per square foot of net rentable area.

Murphy developed an overall capitalization rate of 17.2%. Based on recent sales of office buildings in the market and numerous published sources, Murphy estimated an overall rate of 10% for the office space and a tax load of 7.2%, for a total rate of 17.2%. He then estimated the market value of the office space at $71.89 per square foot, or $10 million rounded.

Murphy employed similar methods to estimate the market value of the hotel area. He stabilized four income streams for the hotel that totaled $24,335,989: (1) the hotel rooms at $17,785,989; (2) food and beverages at $4,450,000; (3) telecommunications at $1 million; and (4) miscellaneous revenues at $1.1 million. Total expenses were stabilized at $15,290,566. In addition, $3,438,199 was deducted for reserves for the replacement or return of furniture, fixtures, and equipment, resulting in an estimated NOI of $5,307,224. Murphy utilized an overall capitalization rate of

17.7% and estimated a total value for the hotel area of $86,398 per room, or $29,980,000 rounded.

To estimate the value of the retail space, Murphy prepared a separate, limited-scope appraisal, which used a different methodology. Murphy developed a model that represented an upscale shopping area that surrounded the subject property. Murphy treated this shopping area as a super-regional mall with each retailer dependent on the others for consumer traffic. He explained that as with existing super-regional malls, anchor stores would pay lower rent per square foot than specialty stores. Murphy's model contained 300,000 square feet devoted to anchor stores and 310,000 square feet devoted to speciality stores. Utilizing rental information from nine buildings containing retail space and located in the subject property's general area, Murphy concluded that the lessor of the mall would rent the anchor space for $9.50 per square foot and would rent space for the speciality stores at $60 per square foot. Based on these numbers, Murphy prepared a traditional income approach to market value.

Murphy attributed a total EGI to the model of $34,870,000, or $57.16 per square foot. He deducted a vacancy and collection loss of 10%. He also deducted operating expenses, personal property, lease up and build out costs, replacements for reserves, and business value resulting in an NOI before debt services of $17,786,180, or $29.16 per square foot. With a total capitalization rate of 16.7%, Murphy estimated that the model mall

had an estimated value of $106,504,072, or $174.60 per square foot. Murphy then converted the model to a market value attributable to the subject property, but he discounted the basement area because it could not be used for public space. Murphy's final estimate of market value for the retail space was $3,270,000 rounded.

After reconciling the value of each section, Murphy opined that the subject property's total indicated market value as of January 1, 1998, was $43,250,000.

At the conclusion of Murphy's testimony, the BOR moved for a directed finding, arguing that the limited scope of Murphy's appraisal and his reliance on the income approach was insufficient to establish market value. The PTAB denied the motion.

The BOR presented testimony of James Frommeyer, who prepared a summary appraisal report. Frommeyer prepared the report when he was employed by the Cook County assessor's office and opined that the subject property's fair market value as of January 1, 1998, was $68 million. Frommeyer did not personally inspect the subject property, but he relied on descriptive information from an independent 1994 appraisal, information from Omni Chicago's web site and other records and reports archived with the BOR and county assessor.

Frommeyer testified that he utilized all three traditional approaches to value. Under the cost approach, Frommeyer analyzed the sales of 18 properties ranging in size from 8,424 to 108,216 square feet that took place between May 1996 and July 1999.

Although the properties were not located in the same "high-end locale" as the subject property, they were located in comparable high-end areas. The sale prices for the 18 properties ranged from $3 million to $55,900,000, or between $206.67 and $972.62 per square foot. After examining the sales and adjustments for size, location, and utility, Frommeyer estimated a figure of $500 per square foot of land area, or $8,775,000. Frommeyer then used Marshall & Swift's Commercial Estimator as a basis for a replacement cost new and estimated the market value of the subject property of $69,325,000.

Under the sales approach, Frommeyer analyzed each area (hotel, retail, and office space) independently. Although he identified 12 hotels that sold between April 1987 and September 1999, he relied on three sales that sold between January 1997 and December 1998 for $46 million, $56.9 million, and $90.5 million. The hotels were built in 1972, 1974, and 1988 respective to their sale prices and ranged in size from 184,250 to 368,800 square feet with 341 to 500 rooms. Frommeyer made adjustments for size, age, location, and condition and estimated the sale price per year for each room of $134,897, $113,800, and $141,509. He then utilized a figure of $120,000 per room for the subject property's 347 rooms, estimating a total market value of $41,640,000 for the hotel area of the subject property.

Concerning the retail space, Frommeyer examined 15 retail sales in Chicago, but focused on four that were located near the

7

subject property. These retail spaces sold for between $5.4 million and $30.5 million, or $306.07 to $677.78 per square foot. After making adjustments for location, size, age, and condition, Frommeyer utilized a gross square footage for the retail area of the subject property of 28,875 square feet with a value of $210 per square foot for a total value of $6,063,750. He also used a net rentable area of 24,680 square feet and a unit value of $235 for an indicated value of $5,700,800. After reconciling these numbers, Frommeyer testified that the total market value for the retail space was $5.8 million.

For the office space, Frommeyer identified seven sales of multitenant office buildings in Chicago and relied on three of them that were sold between April 1998 and June 1999 for prices ranging from $98 million to $133,240,000. Although he could not specifically recall the details of the adjustments, he testified that adjustments for location, size, age, and condition were made. Based on that information, Frommeyer opined that the unit value of the subject property was $125 per square foot of gross building area for a market value of $20,400,000. He then utilized a unit value for the subject property of $150 per square foot of net rentable area based for a market value of $20,500,000. He reconciled these totals and opined that the market value of the office space was $20,500,000. The three areas combined for a total market value of $68 million.

Frommeyer based his income approach on the subject property's

income and expenses for 1994 and 1995 and a forecast of the subject property's 1996 income and expenses. Frommeyer gathered this information from an attorney's brief from a previous assessment and a 1994 appraisal filed with the county assessor. He also utilized numerous industry reports.

Concerning the hotel area, Frommeyer testified that it had an NOI of $7,761,097, to which he applied a loaded capitalization rate of 18.6%, for a total value of $41,730,000. Frommeyer combined the office and retail area and developed two market values. He opined that the office and retail space had an NOI of $4,426,495. He applied a 16.85% loaded capitalization rate for a total value of $26,270,000. Frommeyer also used a stabilized net income of $3,050,000, deducted at a 10% vacancy and collection loss, to which he applied a partially loaded capitalization rate of 10.23%, resulting in a total value of $26,820,000. He reconciled these two methods for a total market value of $26,270,000.

Frommeyer testified that he gave equal weight to the sales comparison and income approach, although the scales tipped slightly to the income approach. His final opinion was that the subject had a total market value of $68 million as of January 1, 1998.

Omni called Anthony Uzemack as a rebuttal witness. Uzemack completed a technical review of Frommeyer's appraisal report to determine the accuracy and appropriateness of his conclusions. Uzemack opined that Frommeyer's summary appraisal was not actually

an appraisal under standards promulgated by the Uniform Standards of Professional Appraisal Practice (USPAP), but it was merely a report. He testified that the report was too brief, lacked substance, had no support material for the opinions, and lacked explanation of how the appraiser arrived at his conclusions. In Uzemack's opinion, the report was unreliable.

On cross-examination, Uzemack testified that, in his opinion, it would be a "critical problem" if an appraiser omitted the sales comparison approach for the subject property.

The PTAB found that the subject property was unique in the Cook County market and that, when it considered all three traditional approaches, the scale weighed toward the income approach. The PTAB found that the best evidence to estimate the subject property's market value was the testimony, data and analysis contained in the income approach to value performed by Murphy on behalf of Omni. On the other hand, the PTAB found that the BOR's evidence, and in particular Frommeyer's appraisal, was "very weak" and without explanations of methodologies or supporting documentation. Thus, the PTAB accepted Omni's market value of $43,250,000, as of January 1, 1998. It applied the 38% assessment as originally set (the assessment level is no longer challenged), for a total assessment of $16,435,000. This appeal followed.

ANALYSIS

The BOR presents two issues for review. The BOR first contends: "The method of valuation adopted by the PTAB, which

excluded the sales comparison approach to value, was improper as a matter of law."  In response to the BOR's contention that this issue raises a question of law, Omni responds that the PTAB merely placed "more weight on [Mr.] Murphy's appraisal" and, therefore, is neither contrary to law nor against the manifest weight of the evidence  The PTAB responds its "decision as to market value is not against the manifest weight of the evidence."

In addition, the BOR argues that the PTAB, in accepting certain premises underlying Mr. Murphy's appraisal, improperly utilized a vague and expanded definition of market value based on a hypothetical model with no basis in fact or law.  According to the BOR, the Urban appraisal expanded the definition of market value for the subject property to include three "new requirements": the property must (1) meet all debt service requirements; (2) generate enough cash to maintain and repair the physical plant; and (3) provide sufficient net operating income to "allow a reasonable annual cash equity return."  According to the BOR, the hypothetical model "assumed that the subject retail space was part of a *** 'horizontal mall' comprised of other separately owned and operated retail facilities located along Michigan Avenue."  The PTAB presents no direct response to the BOR's second issue.  Omni responds that the reliability of "Mr. Murphy's definition of market value and his hypothetical model" were within the purview of the PTAB's factual determinations and therefore not subject to de novo review by this court as a question of law.

11

## I. Standard of Review

Because we find the first issue presented by the BOR dispositive of the appeal, we limit our determination of the standard of review to that issue.

The disagreement between the parties regarding the applicable standard of review stems from their disagreement about the actual issue on appeal. The BOR, as appellant, challenges the method of valuation utilized by the PTAB, which it contends is a question of law. Omni and the PTAB, as appellees, seek to turn our review into one of assessing the competing evidence and, as such, this court's review would be limited to determining whether the PTAB's decision was against the manifest weight of the evidence. We agree with the BOR; the initial issue before us concerns the method of valuation utilized by the PTAB to reduce the valuation of the Omni property and, as such, presents a question of law.

As our supreme court stated in addressing a similar challenge: "[W]e are not charged with the responsibility of determining the market value of the subject property. Rather, the central question before us is whether the PTAB's decision to reduce petitioner's tax assessments for the [1998] tax year[] was correct. The determination turns on whether petitioner employed a proper valuation method in assessing the subject property." Kankakee County Board of Review v. Property Tax Appeal Board, 226 Ill. 2d 36, 50, 787 N.E.2d 363 (2007). While our analysis does not begin with a question of statutory construction as the supreme court's

analysis did in Kankakee County Board of Review, the bottom-line issue is the same: "[W]hether the PTAB considered appraisals that utilized the proper methodology for the valuation of the subject property.  This, too, is a legal question to be reviewed de novo. Kankakee County Board of Review v. Property Tax Appeal Board, 131 Ill. 2d 1, 14[, 544 N.E.2d 762] (1989).  See also United Airlines, Inc. v. Pappas, 348 Ill. App. 3d 563, 569[, 809 N.E.2d 735] (2004) ('This appeal requires us to examine the appropriateness of the valuation methodology used by taxpayer's expert in valuing the leasehold interest to support its objection to the leasehold's assessed value. *** Therefore, our standard of review relating to the question of law at issue in this appeal is de novo'); Board of Review v. Property Tax Appeal Board, 304 Ill. App. 3d 535, 538[, 710 N.E.2d 915] (1999) ('Where the propriety of the method of valuation is challenged *** the issue is one of law')."  Kankakee County Board of Review, 226 Ill. 2d at 51.

## II.  Market Value

"Illinois law requires that all real property 'shall be valued at its fair cash value, estimated at the price it would bring at a fair, voluntary sale.' "  Chrysler Corp. v. Property Tax Appeal Board, 69 Ill. App. 3d 207, 211, 387 N.E.2d 351 (1979), citing Ill. Rev. Stat. 1971, ch. 120, par. 501.  "Fair cash value is synonymous with fair market value."  People ex rel. Korzen v. American Airlines, Inc., 39 Ill. 2d 11, 18, 233 N.E.2d 568 (1967); Walsh v. Property Tax Appeal Board, 181 Ill. 2d 228, 230, 692 N.E.2d 260

13

(1998).  "Market values generally are the standard to be used in valuing property for tax purposes."  Consolidation Coal Co. v. Property Tax Appeal Board of the Department of Local Government Affairs, 29 Ill. App. 3d 465, 470, 331 N.E.2d 122 (1975).

In the absence of a "contemporaneous sale between parties dealing at arm's length" that would be practically conclusive on the issue of market value, valuation methods are employed to estimate the property's fair market value. Residential Real Estate Co. v. Illinois Property Tax Appeal Board, 188 Ill. App. 3d 232, 242, 543 N.E.2d 1358 (1989).  There are three basic valuation methods: the comparison approach, the income approach, and the reproduction cost approach. Chrysler Corp., 69 Ill. App. 3d at 211.  Generally, "[n]one of these methods *** provides conclusive evidence of value but are only factors to be considered." Residential Real Estate Co., 188 Ill. App. 3d at 243. Professional appraisals generally employ more than one method to determine valuation; the use of more than one method in a single appraisal serves as a check on the value reached by the other method or methods.  See Willow Hill Grain, Inc. v. Property Tax Appeal Board, 187 Ill. App. 3d 9, 12-13, 549 N.E.2d 591 (1989) (appraisers for appellee and appellant sought to "check" replacement cost approach valuation "with that of actual sales transacted in the marketplace").  In theory, the different valuation approaches should lead to the same value.  "As this may not be the case in practice, one of the duties of the professional appraiser is to

weigh any disparate results in order to reach a determination that best reflects the total true value of the property."  Chrysler Corp., 69 Ill. App. 3d at 211.

III.  Sales Comparison or Market Approach

In the absence of market value set by a contemporaneous arm's-length sale, "[t]he sales comparison approach *** is the preferred method and should be used when market data [are] available." United Airlines, 348 Ill. App. 3d at 572.  The sales approach is often referred to as the market approach because it relies on sales of comparable properties in the open market to reach a determination of the subject property's true value.  See Willow Hill Grain, Inc. v. Property Tax Appeal Board, 187 Ill. App. 3d 9, 549 N.E.2d 591 (1989) (sales comparison approach interchangeable with market approach).

The existence of market data is central to the market approach valuation method.  United Airlines, 348 Ill. App. 3d at 572 (appraiser erred when he "failed to consider market data in calculating the appraised value" (emphasis added)).  Market data are sale prices of comparable properties to the subject property.

That we look first to market data to determine fair cash value is long established.  "What constitutes market value is a question of law, and is the price which the owner, if desirous of selling, would under ordinary circumstances surrounding the sale of property have sold the property for and what a person desirous of purchasing, but not compelled to purchase, would have paid for it."

City of Chicago v. Farwell, 286 Ill. 415, 419, 121 N.E. 795 (1918). In Farwell, the supreme court held there are few instances where the market value of property by sales comparison cannot be established. The exclusion of market valuation by sales comparison is limited to "property [that] is of such nature and applied to such special use that it cannot have a market value, such as a church, college, cemetery, club house, or terminal of a railroad. [Citations.]" (Emphasis added.) Farwell, 286 Ill. at 420.

The exclusion of the sales comparison approach in a taxpayer's appraisal based on a claim of special use property has been addressed in several appellate court cases: Chrysler Corp., 69 Ill. App. 3d 207, United Airlines, 348 Ill. App. 3d 563, and Kendall County Board of Review v. Property Tax Appeal Board, 337 Ill. App. 3d 735, 737-38, 787 N.E.2d 363 (2003).

In United Airlines, the appraisal presented on behalf of the taxpayer was challenged as fatally flawed because it "failed to consider available market data, [and therefore,] the appraisal should be insufficient to overcome the presumption that the assessment is correct as a matter of law." United Airlines, 348 Ill. App. 3d at 570. The taxpayer's appraisal did not use the sales comparison approach to estimate market value because, relying on our holding in Kendall County, "no evidence existed in the record indicating a reasonable actual or potential market for the property." United Airlines, 348 Ill. App. 3d at 571. The appraiser's explanation for the failure to consider market data was

that "comparable leases sufficient to derive a market rent figure did not exist, [therefore he] used the cost approach to estimate market rent." United Airlines, 348 Ill. App. 3d at 570. The taxpayer argued that its appraiser properly used the reproduction costs valuation method because "no market value can be determined." United Airlines, 348 Ill. App. 3d at 571. The taxpayer relied on Kendall County, 337 Ill. App. 3d at 737-38, where we found the record was "devoid" of any market for the subject telecommunications facility built in an agricultural zone but not salable as a telecommunications center, for its contention that no sales comparison data need be presented so that it was proper to rely solely on the "cost approach."

In United Airlines, we rejected the comparison of terminal baggage space to an outdated telecommunications facility, built under a special permit, for purposes of determining whether market data existed. "We agree with collector that [the taxpayer's appraiser] erred in failing to consider market data in calculating the appraised value of the leasehold interest. We are unpersuaded by taxpayer's contention that the leasehold interest related to special purpose property for which no market exists. *** The key criterion in determining whether property is special purpose property is 'whether the property is in fact so unique as to not be salable, not what factors might or might not make it so unique.' " United Airlines, 348 Ill. App. 3d at 572, quoting Chrysler Corp., 69 Ill. App. 3d at 213.

17

We acknowledged that "the rental of an airport terminal may be considered property of special use; [however,] we are not persuaded that the lease of such property is 'so unique as to not be salable.' " United Airlines, 348 Ill. App. 3d at 572, quoting Chrysler Corp., 69 Ill. App. 3d at 213. We took note that "[t]he airline industry consists of a multitude of airlines, many of which would likely eagerly pursue available terminal space at what has been known as the world's busiest airport." United Airlines, 348 Ill. App. 3d at 572.

In Chrysler Corp., the Second District rejected the school unit's claim that massive size of the Chrysler plant warranted the plant be characterized as "special purpose property" so that market value could be determined by the reproduction cost approach alone because of "insufficient evidence of market values." Chrysler Corp., 69 Ill. App. 3d at 211-12. The school unit's appraiser calculated the market value at $61 million, relying exclusively on the reproduction cost approach. Chrysler Corp., 69 Ill. App. 3d at 210. The appraiser for Chrysler relied on two different methods of valuation, the reproduction cost and the comparable sales, in reaching a final market value of $23 million. Chrysler Corp., 69 Ill. App. 3d at 209. The PTAB, based primarily on the appraisal submitted by the school unit, set the market value at $56 million. Chrysler Corp., 69 Ill. App. 3d at 210. In reversing, the court in Chrysler Corp. noted that while it was true that there were no sales of other plants of similar size in the surrounding area,

18

1-04-2402

"there were numerous sales of extremely large properties" that could provide market data as to the value of the Chrysler plant. Chrysler Corp., 69 Ill. App. 3d at 213. The court grounded its holding on the existence of such market data: "We hold, therefore, that there was sufficient credible evidence of comparable sales for these sales to be given significant weight as evidence of market value. It follows that the Property Tax Appeal Board's assignment of valuation herein based solely on a reproduction cost method was incorrect as a matter of law." Chrysler Corp., 69 Ill. App. 3d at 214.

Here, neither Omni nor the PTAB contends the Omni property is "special purpose property" so that no reliable market data are available based on such a characterization of the property. Nonetheless, the PTAB in its written decision accepted and adopted Omni's assertion that the Omni property possessed a "unique character" such that "there were no sales of building similar to the subject within the Chicago area making a reliable sales analysis problematical." This claim made by Omni, accepted by the PTAB, is similar to the claims made in United Airlines, and Chrysler Corp.: no "reliable" market data are available to allow for the use of the sales comparison approach. But as we made clear in United Airlines and Chrysler Corp., the test to determine whether the sales comparison approach may be omitted is whether the subject property is so unique as to not be salable, for which no market exists.

19

We note before the PTAB was a list of 34 sales in the BOR's report offered as comparables to each of the three profit centers for the Omni property: "sales [of] twelve Chicago hotels, fifteen sales of retail sites, and the sales of seven multi-tenant offices buildings."[1]  While the PTAB rejected the BOR's report "as not contain[ing] enough detail and/or analysis to draw any reliable conclusion of comparability," what is crucial is the PTAB's implicit acknowledgment that comparable properties exist. This implicit acknowledgment became explicit, according to the BOR's brief, in Omni's own appraisal by its reliance on " ' comparable sales' to estimate capitalization rates for the office and retail components of the subject property."  The Omni appraiser used historic office space rentals of four buildings located in close proximity to the subject property to estimate the market value of the office space; he used rental information from nine buildings containing retail space in the same general vicinity to calculate the market value of the retail space.  That market data of comparable properties existed to sufficiently calculate market

---

[1] Much as the school unit's faulted appraiser in Chrysler Corp., the Omni appraiser's claim that no comparables existed is suspect where he "made no independent examination of the other properties discussed by [the report submitted by the BOR]." Chrysler Corp., 69 Ill. App. 3d at 210.  His silence on the "comparability" issue was accepted without comment by the PTAB.

20

value under the sales comparison approach is reinforced by the testimony of Omni's rebuttal expert witness: "I believe that the three standard approaches to value had no problem being used in an appraisal technique for this type of property. ***  I think it's a critical problem to even venture a thought of wanting to omit the sales comparison approach."  (Emphasis added.)  See United Airlines, 348 Ill. App. 3d at 572 (airline appraiser "acknowledged that leases with other airlines existed at O'Hare Airport" so as to support conclusion that "leasehold interest is not so unique as to not be salable and for which no market exists").

The PTAB's rejection of the evidence set forth in the sales comparison approach offered by the BOR does not benefit Omni.  When a party appeals an assessment in the PTAB, that party has the burden of going forward with "'substantive, documentary evidence or legal argument sufficient to challenge the correctness of the assessment.'"  The Cook County Board of Review v. The Property Tax Appeal Board, 334 Ill. App. 3d 56, 59, 777 N.E.2d 622 (2002), quoting 86 Ill. Adm. Code §1910.63(b) (Conway Greene CD-ROM 2002). The PTAB must look to the challenging party's submission of substantive, documentary evidence to determine whether that party has carried its burden of challenging the correctness of the assessment.  Where the correctness of the assessment turns on market value and there is evidence of a market for the subject property, a taxpayer's submission that excludes the sales comparison approach in assessing market value is insufficient as a

1-04-2402

matter of law. "By failing to consider the sales comparison approach in determining market value of the leasehold interest, we conclude that taxpayer has not met its burden of demonstrating that the assessment was incorrect by clear and convincing evidence." United Airlines, 348 Ill. App. 3d 573; 86 Ill. Adm. Code §1910.63(e) (Conway Greene CD-ROM 2002) ("inequity of the assessments must be proved by clear and convincing evidence"); Chrysler Corp., 69 Ill. App. 3d at 214 (where there is evidence of comparable sales, the PTAB's assignment of valuation based on the exclusion of comparable sales is incorrect as a matter of law).[2]

The importance of the market or sales comparison approach is embodied in the Administrative Code, which governs the procedure before the PTAB. The Code provides that the PTAB generally addresses either of two contentions in appeals regarding the correct valuation of property for assessment purposes: "(1) the

_____

[2]While both United Airlines and Chrysler Corp. were decided before the de novo provision was added to the statute setting out the procedure before the PTAB (35 ILCS 200/16-180 (West's 2005), effective July 16, 2004), the taxpayer, as the party contesting the assessment affirmed by the BOR, bears "the burden of going forward [with proper and admissible] substantive, documentary evidence *** sufficient to challenge the correctness of the assessment of the subject property." 86 Ill. Adm. Code §1910.63(b) (Conway Greene CD-ROM 2002).

22

subject property is not accurately assessed when its assessment is compared to the assessment of other, similar properties in its neighborhood; and/or (2) the market value of the subject property is not accurately reflected in its assessment." 86 Ill. Adm. Code §1910.65 (a) (Conway Greene CD-ROM 2002). Regardless of the contention under which the taxpayer proceeds, "it is recommended that not less than three comparable properties be submitted. Documentation must be submitted showing the similarity, proximity and lack of distinguishing characteristics of the assessment comparables to the subject property." (Emphasis added.) 86 Ill. Adm. Code §1910.65 (b) (Conway Greene CD-ROM 2002).

It is also no answer to call the sales approach "problematical" in light of the "unique character" of the Omni building. Being problematical says nothing more than it might be difficult to do.[3] It falls within the duties of a professional appraiser to reconcile any "disparate results" under other valuation methods "in order to reach a determination that best reflects the total value of the property." Chrysler Corp., 69 Ill. App. 3d at 211. Based on the testimony of Omni's rebuttal expert witness, it is a deviation of the duties of a professional appraiser to omit the sales comparison approach in valuing the Omni

---

[3] It was not demonstrated that employing the sales comparison approach would have resulted in unreliable estimates of the fair market value of the Omni property.

property.  That there was evidence before the PTAB that comparable property existed for purposes of determining the market value of the Omni property is beyond contention as evidenced in both the Omni appraisal and the report submitted by the BOR.  "It follows that the Property Tax Appeal Board's assignment of a valuation herein based solely on [the income] method was incorrect as a matter of law."  Chrysler Corp., 69 Ill. App. 3d at 214.  "We agree with collector that [taxpayer's appraiser] erred in failing to consider market data in calculating the appraised value of the leasehold interest."  United Airlines, 348 Ill. App. 3d at 572.

In reaching this decision, we note the observation of the Chrysler Corp. court: "[B]y using different methods of valuation a county could change the taxes paid by a particular business just as certainly as it could have done by using a different assessment procedure ***."  Chrysler Corp., 69 Ill. App. 3d at 213.  The ability to manipulate the amount of taxes due based on the selection of the method of valuation is no less available to the taxpayer.  See United Airlines, 348 Ill. App. 3d at 570 ("appraisal should have been based in whole or in part on the sales comparison approach, especially in light of the disparity between the monthly rent of $606,000 computed by [taxpayer's appraiser utilizing the cost approach] and the actual monthly rent paid by the taxpayer of $4,300,000").

The concern expressed by the Chrysler Corp. court applies equally here: "[T]he constitutional provision [regarding uniformity

of assessment levels] highlights the strong public interest in treating taxpayers in a uniform manner.  Relying solely on reproduction cost [(here, the income approach)] when another method is used to value all other property in a county is a practice that should be tightly limited.  Likewise, characterization of one piece of property among 12,000 [(here, many more we are sure)] *** is something that should be done only as a last resort."  <u>Chrysler Corp.</u>, 69 Ill. App. 3d at 214.  Compare <u>Walsh v. Property Tax Appeal Board</u>, 181 Ill. 2d 228, 235, 692 N.E.2d 260 (1998) ("To the extent *** assessed valuations bear little relationship to true fair cash value, they result in the <u>unequal sharing of the collective tax burden</u> and thus violate the Property Tax Code, as well as the Illinois Constitution's uniformity clause" (emphasis added)).  Based on the PTAB's own finding that Omni's appraiser "did not prepare a sales comparison approach because there were no sales of similar properties in the Chicago area" the PTAB's willingness to rely on this assertion conflicts with its obligation to determine the property tax assessment "based upon equity and the weight of evidence."  35 ILCS 200/16-185 (West Supp. 1993).

As made clear by the three special use property cases, <u>United Airlines</u>, <u>Chrysler Corp.</u>, and <u>Kendall County</u>, the market or sales comparison approach must be presented in a taxpayer appraisal to satisfy Illinois case law that market value be established to properly decide property tax assessment except where no market exists for the sale of the property.  Omni does not venture a

suggestion that there is no market for its blended mix of hotel, office and retail stores so as to make its property not salable. If the Omni building were put on the market tomorrow, and Omni were really desirous of selling, there can be no doubt that the price reached by Omni and a willing and well-financed buyer would be based on the market prices of comparable properties.   The Omni property does not approach the uniqueness of property for which market value by sales comparison would be impossible to estimate. We repeat the salient role the sales comparison approach plays in estimating property value aptly expressed by Omni's own rebuttal expert witness: "I think it's a critical problem to even venture a thought of wanting to omit the sales comparison approach." (Emphasis added.)

The exclusion of the sales comparison or market approach in light of the existence of market data regarding comparable properties rendered Omni's appraisal insufficient as a matter of law to challenge the correctness of the property tax assessment. Consequently, the PTAB's reliance on that appraisal as "the best evidence to estimate the subject property's market value" was erroneous as a matter of law.

Our resolution of this issue is dispositive of the appeal; we need not address the BOR's other arguments.

CONCLUSION

For the reasons stated, we reverse the judgment of the PTAB and direct that the assessment finalized by the Cook County Board

26

of Review be reinstated.

Reversed and remanded with directions.

CAHILL, P.J., and WOLFSON, J., concur.

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**

THE COOK COUNTY BOARD OF REVIEW,
        Petitioner-Appellant,
v.
ILLINOIS PROPERTY TAX APPEAL BOARD,
an administrative agency created by 35 ILCS 200/7-5, and
OMNI CHICAGO, taxpayer,
        Respondents-Appellees.

**No. 1-04-2402**

**Appellate Court of Illinois**
**First District, First Division**

**Filed: July 28, 2008**

**JUSTICE GARCIA delivered the opinion of the court.**
**Cahill, P.J. and Wolfson, J., concur.**

**Petition for Review of Decision of the**
**Property Tax Board and Docket Numbers.**

| | |
|---|---|
| **For PETITIONER-**<br>**APPELLANT** | **Patrick T. Driscoll, Jr., Chief, Civil Actions Bureau**<br>**Whitney T. Carlisle, Assistant State's Attorney, Of Counsel**<br>**Michael C. Prinzi, Assistant State's Attorney, Of Counsel**<br>**RICHARD A. DEVINE**<br>**State's Attorney of Cook County**<br>**Richard J. Daley Center–Room 500**<br>**Chicago, Illinois 60602** |
| **For RESPONDENT-**<br>**APPELLEE**<br>**Illinois Property**<br>**Tax Appeal Board** | **Gary Feinerman, Solicitor General**<br>**Diane M. Potts, Assistant Attorney General**<br>**LISA MADIGAN**<br>**Attorney General State of Illinois**<br>**100 West Randolph Street, 12th Floor**<br>**Chicago, Illinois 60601** |
| **For RESPONDENT-**<br>**APPELLEE** | **Patrick C. Doody**<br>**Liat R. Meisler** |

1-04-2402

**Omni Chicago**                    **FIELD & GOLAN**
                                     **70 West Madison Street, Suite 1500**
                                     **Chicago, Illinois 60602**

**THE COOK COUNTY BOARD OF REVIEW,**
     **Petitioner-Appellant,**
     v.
**ILLINOIS PROPERTY TAX APPEAL BOARD,**
**an administrative agency created by 35 ILCS 200/7-5, and**
**OMNI CHICAGO, taxpayer,**
     **Respondents-Appellees.**

<u>No. 1-04-2402</u>

**Appellate Court of Illinois**
**First District, First Division**

**Filed: September 8, 2008**

<u>**JUSTICE GARCIA delivered the supplemental opinion of the court**</u>
<u>**on denial of petition for rehearing.**</u>
**Cahill, P.J., and Wolfson, J., concur.**

**Petition for Review of Decision of the**
**Property Tax Board and Docket Numbers.**

| | |
|---|---|
| **For PETITIONER-**<br>**APPELLANT** | **Patrick T. Driscoll, Jr., Chief, Civil Actions Bureau**<br>**Whitney T. Carlisle, Assistant State's Attorney, Of Counsel**<br>**Michael C. Prinzi, Assistant State's Attorney, Of Counsel**<br>**RICHARD A. DEVINE**<br>**State's Attorney of Cook County**<br>**Richard J. Daley Center–Room 500**<br>**Chicago, Illinois 60602** |
| **For RESPONDENT-**<br>**APPELLEE**<br>**Illinois Property**<br>**Tax Appeal Board** | **Gary Feinerman, Solicitor General**<br>**Diane M. Potts, Assistant Attorney General**<br>**LISA MADIGAN**<br>**Attorney General State of Illinois**<br>**100 West Randolph Street, 12th Floor**<br>**Chicago, Illinois 60601** |
| **For RESPONDENT-**<br>**APPELLEE**<br>**Omni Chicago** | **Patrick C. Doody**<br>**Liat R. Meisler**<br>**FIELD & GOLAN**<br>**70 West Madison Street, Suite 1500**<br>**Chicago, Illinois 60602** |

No. 1-04-2402

| | | |
|---|---|---|
| THE COOK COUNTY BOARD OF REVIEW, | ) | Petition for |
| | ) | Review of Decision |
| Petitioner-Appellant, | ) | of the Property Tax |
| | ) | Board and Docket |
| v. | ) | Numbers. |
| | ) | |
| ILLINOIS PROPERTY TAX APPEAL BOARD | ) | |
| and OMNI CHICAGO, | ) | No.  98 29670-C-3 |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE GARCIA delivered the supplemental opinion of the court on denial of petition for rehearing.

In its petition for rehearing, which Omni adopted, the PTAB first contends rehearing should be granted "because the appraisers agreed the income approach best measured Omni's market value."  Our opinion does not challenge any "agreement" that might have been reached regarding the "best approach."  We are aware that in virtually every case involving appraisals of market value of real property a decision must be made as to which of the three approaches utilized by the appraisers best reflects true market value.  Our opinion does nothing to remove that decision from appraisers.  Our opinion simply holds that a single approach appraisal is inadequate as a matter of law to warrant a "best approach" decision except when there is "no evidence of an actual

2

or a potential market for the subject property." <u>Kendall County</u>, 337 Ill. App. 3d at 741. The PTAB makes no argument that the Omni property satisfied that test here.

In its second argument for rehearing, the PTAB expresses concern that based on our opinion "appraisers [must] now fully develop a sales comparison analysis regardless of its probative value." The PTAB makes much of its claim that our opinion imposes an "analysis that would not provide meaningful results." In support of its claim, the PTAB quotes the Uniform Standards of Professional Appraisal Practice: "If a 'specific requirement' of valuation 'addresses analysis that would not provided meaningful results in the given assignment,' it is not required." The very same section of the Uniform Standards of Professional Appraisal Practice that the PTAB quotes provides, "A specific requirement is not applicable when *** it addresses analysis that is not <u>typical practice</u> in such an assignment." (Emphasis added.) Our opinion simply takes notice that the "typical practice" based on our case law is to include the sales comparison approach in assessing market value of real property; to exclude it is the exception. See <u>United Airlines</u>, 348 Ill. App. 3d at 572 ("[t]he sales comparison approach *** is the preferred method"). An appraiser must justify an appraisal that excludes the sales comparison approach with more than unsupported conclusions that

"adjustments in [the cost approach] would be too subjective" and "[h]e [could] not employ the sales comparison approach because there [were] no sales of properties similar to the subject property."  Slip op. at 3.  Three appraisers testified before the PTAB.  The BOR's appraiser determined that the Omni property was subject to all three approaches to market value.  Omni's rebuttal expert witness testified that an appraisal not employing the sales comparison approach regarding the Omni property would present a "critical problem."  Only the principal appraiser for Omni submitted an appraisal that relied exclusively on the income approach.  The appraiser did so without any showing that either of the other two approaches would provide results that were not "meaningful."  Nor did this appraiser acknowledge, much less address, the disavowal by his fellow expert witness on behalf of Omni of an appraisal that excluded the sales comparison approach.  Appraisers are free to interpret their governing standards.  Our opinion simply holds that case law and the Administrative Code governing the procedure before the PTAB require a showing be made before a single approach appraisal, which excludes the sales comparison approach, can be relied upon as the "best evidence of market value."

    We also note, absent from the PTAB's petition for rehearing is any argument that the appraisal submitted by Omni and accepted

and adopted by the PTAB utilizing a single approach was warranted because the other two approaches would not have provided "meaningful results in the given assignment." Of course, that argument was foreclosed to the PTAB by Omni's own expert witness presented in rebuttal. To be clear, our opinion does not alter the governing standards for appraisers. Our opinion only reinforces the legislative mandate that the PTAB's "decision *** be based upon equity and the weight of evidence." 35 ILCS 200/16-185 (West Supp. 1993).

Finally, the PTAB contends that our opinion somehow "removes discretion from the Board to weigh expert opinions on market value, contrary to legislative intent." Once again, the PTAB misreads our opinion. The dispositive issue before us is a matter of law. Our opinion is grounded on case law from our supreme court and decisions of this court, now one of first review, and the practice procedure in the Administrative Code that the PTAB is bound to follow. Our holding is straightforward and clear: absent a showing that a single approach appraisal is warranted because the subject property is properly characterized as special use property such that there is no evidence of market data before the PTAB, the taxpayer's burden of going forward to challenge the assessment finalized by the BOR has not been met as a matter of law by a single approach appraisal that excludes the

sales comparison approach.

The PTAB'S petition for rehearing is denied.

CAHILL, P.J., and WOLFSON, J., concur.